Argued August 18, affirmed October 13, 1975

## STATE OF OREGON, *Respondent, v.* JAMES BIRCHARD (No. CR 74-40 and CR 74-41), *Appellant.*

540 P2d 1033

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and LEE, Judges.

LEE, J.

Defendant was convicted of first degree rape, first degree sodomy, and third degree assault. His appeal is based on the refusal of the trial court to grant a continuance to permit him to procure witnesses who would testify *re* defendant's psychiatric records while he was in the Navy.

After the parties had rested on a Friday, this colloquy between the court and counsel for defendant occurred on the following Monday:

"MR. HEISLER: If it please the court, I have one matter to bring to the court's attention. On Friday afternoon, late Friday afternoon I returned to my office and I found in my mail, which hadn't been opened that day because we had been in session here since I had seen Dr. Dixon at 7:30 that morning, I found a letter from a Chaplain Edward Hill of the United States Navy with regard to Mr. Birchard's psychiatric problems in the Navy. Dr. Dixon has been trying for two months to get hold of Mr. Birchard's Naval records. On Friday Dr. Treleaven testified he had no knowledge of any previous psychiatric problems that Mr. Birchard had. We do not have in our possession the medical records or psychiatric records of Mr. Birchard's illness. This chaplain informs us that he thinks they are available although Dr. Dixon was unable to find them. The disciplinary case of Mr. Birchard might have some accurate psychiatric records. Again, we don't have those in our possession, this is the first we knew there were some in actual existence. We would move at this time that this

case be reopened and give the defense an opportunity to have witnesses brought to The Dalles from California to testify as to Mr. Birchard's psychiatric history while he was in the Navy. Of course, we don't have funds and have to ask the court to provide the necessary transportation. I think it is relevant for one reason, Dr. Treleaven based much of his conclusions on the fact there was no prior evidence, as far as he was concerned, of psychiatric trouble on behalf of Mr. Birchard. I feel from what I have seen here that there is, but the Navy being the monster it is we haven't been able to tie it down.

"THE COURT: Can I see the letter, Mr. Heisler?

"(Document handed to the court)

"THE COURT: I'll have it marked as an exhibit.

"MR. HEISLER: As I say, that was received on Friday in my office, I didn't look at it until Friday evening. Dr. Dixon has tried since November 1 to get these records from the Navy. We were informed, Your Honor, we learned there was a possibility these records might be in San Diego, we called the Naval officers in that area and asked if there was any possibility, any way to work this out. We were informed that they had to use the bureaucratic Naval release form. I called Senator Packwood's office to have him intercede and he found they require almost two months for us to get the records if we could establish where they were. We think the defense has been diligent with regard to getting these records, not overly successful.

"THE COURT: The motion to continue will be denied. I assume you are not prepared to offer further testimony today or in the immediate future?

"MR. HEISLER: Not today, Your Honor, we couldn't because we haven't had an opportunity to

come into court with an order regarding transportation expenses.

"THE COURT: I see particularly among the document[s] here, 25 September, 1972, a letter and it says, 'The doctor examined Jim twice again and concluded that your son was healthy and mentally balanced so he will not receive a psychological discharge' and that was *signed by the same Edward T. Hill that signed the letter of December 17th,* so it appears that there is—at least if there are any reports that they would not be fully supportative of the defendant's position in this case. *There is nothing here that sets out any specific psychiatric records.* Due to the timeliness of it since it was apparent during the trial of the case that Edward T. Hill was a known person and there has been some contact with him over the period of time, apparently he has been available and has written this letter, I feel that the motion is not timely, unless the State joins in it I would deny the motion.

"MR. SMITH: The State does not wish to join.

"THE COURT: I will ask the clerk to mark these documents as an exhibit, not for the purposes of the jury, they will be available in the event an appellate court feels differently than I. They will be received solely for the record and not for the jury. * * *" (Emphasis supplied.)

A psychiatrist and defense witness, Dr. Dixon, testified that in his opinion the defendant was, on the date of the alleged crimes, incapable of conforming his conduct to the requirements of law. Dr. Dixon also testified that the defendant: (1) was "suffering from a schizophrenic reaction, paranoid type, latent"; (2) had "a significant distortion of his ability to perceive and understand events and relationships around him"; and (3) had a latent "psychotic disorder."

Dr. McGovern, a clinical psychologist, also testi-

fied for the defense. He found that defendant suffered from schizophrenia in remission and that his condition "would cause him to have a difficult time behaving in a normal fashion."

Dr. Treleaven, a psychiatrist testifying for the state, found no evidence of mental disorder and testified that at the time of the alleged crimes, defendant "did not suffer from any mental disease or defect which would impair his capacity in any way to appreciate what he was doing or to conform his conduct to the requirements of the law." When Dr. Treleaven was asked in what respects he disagreed with Dr. Dixon's diagnosis, he stated "* * * First of all I could not find any evidence, any evidence anywhere that this man had ever suffered from schizophrenia or that he was suffering in any way from schizophrenia at the time I examined him * * *." Concerning Dr. McGovern's diagnosis, he said:

"* * * I don't know how you arrive at a diagnosis of schizophrenia in remission unless there is a time in the past you can point to where a person is schizophrenic. From all the information available to me there was never a time in this man's life to my knowledge where he was actively schizophrenic * * *."

■ Motions for continuance are addressed to the discretion of the trial court. *State v. Edwards,* 3 Or App 179, 186, 471 P2d 843, Sup Ct *review denied* (1970). Reversal will not lie except for an abuse of discretion. *State v. Otten,* 234 Or 219, 222-23, 380 P2d 812 (1963).

■■ In criminal cases it is the general rule that the defendant who seeks a continuance to secure witnesses or other evidence must "show the exercise of due diligence in his attempts to obtain the missing testimony." 17 Am Jur 2d 154, Continuance § 32. *State v. Otten,* supra, indicates that a party seeking a continuance

must show (1) that the witnesses can be produced and (2) that the testimony would be material. No such showing was made by defendant.

Affirmed.